Isabella Bomsta *vs.* Christopher Johnson, Administrator, and another.

February 17, 1888.

**Divorce — Action to Annul Decree for Fraud, after Remarriage of Party obtaining it.**— Notwithstanding the plaintiff in a divorce proceeding has again married, an aggrieved party may, under Gen. St. 1878, c. 66, § 285, maintain an action to set aside and annul a decree *a vinculo* procured by fraudulent acts or practices.

**Same—After Death of such Party.**—Said action may also be commenced and prosecuted after the death of the party obtaining such fraudulent decree.

**Same—Proof of Fraud—Necessary Parties.**—In actions of this nature, the court should require clear proof of the fraud before setting aside a decree, and should also require that all persons interested in a distribution of the estate of the deceased be made parties.

**Same—Requisites of Complaint.**—The complaint therein should specifically point out the act of perjury, or subornation thereof, or the fraudulent acts or practices relied upon, and should also clearly show that the action has been brought within the period of time fixed by the statute in question.

Plaintiff brought this action in the district court for Kandiyohi county, to set aside and annul a decree of divorce rendered in 1879 between herself and her husband John A. Bomsta, who died in 1885.

The defendants are the administrator of John A. Bomsta, and Pauline Ganner, who married the deceased immediately after the entry of the decree of divorce. Plaintiff appeals from an order by *John H. Brown*, J., sustaining a demurrer to the complaint, and directing that the defendants have judgment that the plaintiff take nothing by this action.

*E. St. Julien Cox*, for appellant.

*Arctander & Arctander*, for respondents.

COLLINS, J. Demurrer to a complaint in an action conceded to have been brought by virtue of Gen. St. 1878, *c.* 66, § 285, to set aside and annul a judgment in divorce *a vinculo matrimonii*, entered in 1879, upon alleged default of defendant, the plaintiff herein, who was charged with adultery. Immediately after the entry of said judgment, plaintiff in said action married Pauline Ganner, one of the defendants herein, by whom he had one child at least, and with whom he lived until his death in 1885. There are several children living, the issue of the marriage between this plaintiff and deceased, neither of whom are made parties to this litigation. The statute in question supplants to some extent former methods of vacating and annulling fraudulent judgments. It goes further, and, perhaps improvidently, authorizes the maintenance of an action when a judgment has been procured by perjury or subornation thereof, as well as where a fraud has been committed. The innovation upon the practice in such cases is so marked that parties must certainly expect to bring their pleadings within all the provisions and conditions imposed, especially that which, in express terms, requires the action to be brought within the period of three years after a discovery of the commission or subornation of perjury, or the fraudulent practice of the prevailing party. In the case at bar it is somewhat difficult to determine, from the complaint, whether plaintiff relies upon perjury alleged to have been committed on the trial, or acts of fraud practised in obtaining the decree, or both; and in this respect the pleading is defective. It should clearly and unmistakably aver the precise ground depended upon for the relief demanded, so that the defendants may be advised of the exact charge, and the court prepared to confine the testimony to the real issue.

We are also of the opinion that the complaint, taken as a whole, indicates that when the divorce proceedings were pending this plaintiff had some knowledge thereof, and made no remonstrance or objection; that she was also informed of the marriage of deceased and defendant Pauline, and that thereafter, until his death, they resided together as husband and wife. The pleader may have attempted in the 7th folio of said complaint, where he alleges want of knowledge of the facts of the divorce "until three years last past," and again in the 12th folio, where it is averred plaintiff did not know, "nor was she cognizant of the facts upon which the divorce was obtained, until within the last year past," to negative any impression which might be created in the mind of the court from an inspection of the complaint as an entirety; but, if so, the allegations are insufficient for the purpose contemplated; they are indirect and equivocal.

Several grounds of demurrer are specified therein, (only one of which we have commented upon,) and the court below was fully justified in sustaining it, for the reason that the pleading fails to state a cause of action. But we are not advised of the reason which actuated the court and caused it to go further, and in effect order judgment of dismissal. As it may have been a conviction that an action of the character set forth in the complaint could not, in any event, be successfully maintained, we have deemed it judicious, in view of the importance of the questions suggested by the case as presented, and the fact that the trial court may yet have to determine the merits of the controversy, to discuss somewhat in detail the law relative to the effect and stability—in the absence of positive legislation upon the point—of a judgment dissolving the marriage contract.

Aside from a well-justified reluctance to annul decrees in cases where second marriages have been contracted, the tribunals of this country have, with few exceptions, treated final decrees in divorce precisely as final judgments in ordinary civil actions. When fraudulently obtained they have been repeatedly set aside upon motion, and wholly ignored in criminal prosecutions, without regard to consequences, and the apparent wrong which might be perpetrated upon adults who had married the divorced party, or upon innocent children, the issue of such marriages. Many years ago this court was

called upon to determine the question, and we heartily indorse the utterances of the learned justice who spoke for the court upon the power of a tribunal to vacate and set aside a decree obtained through imposition and fraud upon the court and the party defendant, in cases where the imposition and fraud is clearly made to appear. *True* v. *True*, 6 Minn. 315, (458.) Subsequently, upon the trial of an indictment charging polygamy, the same question, for all practical purposes, arose, and this court very properly held that a judgment of divorce, rendered by a tribunal without jurisdiction of either of the parties, was an absolute nullity, and no defence to the very serious crime charged. *State* v. *Armington*, 25 Minn. 29. The rights of a third party who had married the defendant on the strength of the supposed divorce, as well as the liberty of the citizen, were involved in the last-mentioned action. The position taken by this court in both of the cited cases is abundantly supported by authority. *State* v. *Whitcomb*, 52 Iowa, 85, (2 N. W. Rep. 970;) *Whetstone* v. *Whetstone*, 31 Iowa, 276; *Edson* v. *Edson*, 108 Mass. 590; *Adams* v. *Adams*, 51 N. H. 388; *Everett* v. *Everett*, 60 Wis. 200, (18 N. W. Rep. 637.)

We will now consider a feature of the case which has somewhat complicated the situation, and upon which the counsel for respondents has argued at length, insisting that plaintiff's right of action ended upon the decease of Bomsta, in 1885. The statute—section 285, *supra*—imposes no restrictions whatsoever, and in no way makes the right to sue depend upon any contingency, except as before stated. In plain words, authority is conferred to bring such an action within three years after the fraud and imposition is discovered, and the right does not terminate with the life of the wrong-doer; it may thereafter be pursued in the manner pointed out by the statute. Courts of equity will also exercise jurisdiction in such cases where the remedy at law is not plain, adequate, and complete. Story, Eq. Pl. §§ 426, 473; *Johnson* v. *Coleman*, 23 Wis. 452. The complaint herein states, as before mentioned, that there are children surviving Bomsta, the issue of each of these marriages, and that the defendant Johnson is the administrator of his estate, which it is alleged is of the value of $10,000. If a gross fraud was practised upon the plaintiff by her husband, and her matrimonial *status* should be re-established in this

or another action, the defendant Pauline would be excluded from participating in the estate.   She, as well as the administrator, who is, pending the settlement, entitled to possession of all the property of the deceased, and the heirs—real as well as supposed—are proper parties to this form of action; for the result, when certified to the court which has original jurisdiction of the estates of deceased persons, may affect all.

Order affirmed.