HAROLD D. HARMON v. MARY PRIME HARMON.

(Filed 28 November, 1956.)

**1. Appeal and Error § 46—**

Ordinarily, the doing or refusing to do an act within the discretion of the court is not reviewable on appeal.

**2. Pleadings § 6: Process § 6: Judgments § 18—**

Upon motion to vacate a judgment based upon service by publication on the ground that the clerk of the Superior Court had not sent a copy of the notice of service as required by G.S. 1-99.2, the court may vacate the judgment, and, instead of dismissing the action, may in his discretion order that service be completed in accordance with the provisions of statute and enlarge the time for answering. G.S. 1-152. In the present case the question is moot because of defendant's general appearance.

**3. Appearance § 1—**

The filing of an answer is equivalent to a general appearance.

**4. Appearance § 2—**

A general appearance waives all defects and irregularities in process and gives the court jurisdiction of the answering party even though there may have been no service of summons.

**5. Divorce and Alimony § 2½ d—After divorce obtained in good faith without fraud, cohabitation with second wife is not rendered adulterous by decree setting aside divorce.**

After decree of absolute divorce, the husband remarried. Thereafter, the first wife had the decree set aside for defective service for that the clerk had not mailed her a copy of the order of service by publication, although the affidavit of the husband had given her correct address. Upon intimation that the court would set aside the decree, the husband ceased to cohabit with the second wife, and continued his action for absolute divorce on the ground of separation. The first wife filed answer alleging his adulterous cohabitation as a bar. *Held:* The husband having done all required of him by law for service by publication and the evidence disclosing no intentional wrong on his part or fraud or collusion in procurement of the divorce decree, his cohabitation with the second wife up to the time he knew the decree would be set aside was not adulterous so as to bar his right of action.

**6. Appeal and Error § 38—**

Exceptions not set out in the brief and in support of which no reason or argument is stated or authority cited are taken as abandoned. Rule of Practice in the Supreme Court No. 28.

JOHNSON, J., not sitting.

APPEAL by defendant from *Campbell, J.,* May Term, 1956, of MECK-LENBURG.

This is an action instituted by the plaintiff for an absolute divorce based on separation of more than two years.

The plaintiff, Harold D. Harmon, and the defendant, Mary Prime Harmon, were married 17 December 1933. The plaintiff and defendant, then living in Miami, Florida, separated on 22 October 1946. The plaintiff, a senior pilot for Eastern Air Lines, moved to Atlanta, Georgia, and was later transferred to Charlotte, North Carolina, where he has lived since 1 April 1954.

On 28 February 1955 the plaintiff instituted this action. Summons was issued and verified complaint was filed. The Sheriff of Mecklenburg County returned the summons issued in this action endorsed, "The defendant, Mary Prime Harmon, cannot after due and diligent search be found within the State of North Carolina. Said defendant is in fact a resident of Miami Springs, Dade County, Florida, and lives at 160 South Drive, Miami Springs."

Thereafter, on 1 March 1955, pursuant to an affidavit for service on the defendant by publication, the court entered an order of publication directing that such order be published in the *Mecklenburg Times,* a newspaper published in Mecklenburg County, once a week for four weeks. The affidavit for service by publication set forth therein that the defendant was a resident of Miami Springs, Dade County, Florida, and lived at 160 South Drive in Miami Springs.

The notice of publication was published as required by the order of the court in the *Mecklenburg Times* and the affidavit of the publisher of such paper was duly filed in proper form in this action. The defendant filed no answer.

At a term of the Superior Court in Mecklenburg County on the 26th day of April 1955, the case was tried. The jury answered the issues in favor of the plaintiff and he was granted an absolute divorce.

On the 23rd day of July 1955, the plaintiff married Betty Curtis of Birmingham, Alabama, who thereupon moved to Charlotte and lived with the plaintiff as his wife until the 9th day of February 1956.

The defendant, Mary Prime Harmon, on 29 August 1955, through her attorneys, made a special appearance and filed a motion (1) to vacate the judgment of divorce entered by Judge Patton for that the Clerk of the Superior Court of Mecklenburg County had not sent a copy of the notice of service of process by publication to the defendant as required by G.S. 1-99.2, and (2) to dismiss the action.

The hearing on the above motion was finally disposed of on 10 February 1956. On 9 February 1956 the court intimated that it would set aside the judgment on the next day. The plaintiff and his wife, Betty Curtis Harmon, of the second marriage, having been notified that the court would set aside the previous divorce decree entered in this cause, separated on 9 February 1956. Judge Campbell held that

"service of process upon the defendant was not completed at the time of the rendition of the judgment herein, that the same was improvidently entered, and that such judgment should be set aside." Judgment was accordingly entered. However, the court in its discretion ordered that notice of the institution of the action, with copy of the original summons and verified complaint theretofore filed in the cause, be mailed by the Clerk of the Superior Court of Mecklenburg County to Mary Prime Harmon, defendant, at 160 South Drive, Miami Springs, Florida, within five days after the entry of the order, "which notice shall further notify said defendant that she is required to appear before the Clerk of the Superior Court of Mecklenburg County, North Carolina, at the courthouse of said county in Charlotte, North Carolina, within thirty-five (35) days of the date of mailing said notice, and answer or otherwise plead to the complaint in this action, or the plaintiff will apply to the court for the relief demanded in the complaint herein."

The defendant excepted to the refusal of the court to dismiss the action. Later, however, she filed a verified answer in which she admitted that the plaintiff and defendant had lived separate and apart for more than two years; but alleged in her further answer and defense, as a bar to the relief sought by the plaintiff, that on or about 23 July 1955 and on numerous occasions thereafter the plaintiff had committed adultery with Betty Curtis in Birmingham, Alabama, and Charlotte, North Carolina.

This cause came on for trial at the May Term 1956 of the Superior Court of Mecklenburg County. Issues were submitted to the jury and answered as follows:

"1. Has the plaintiff been a resident of the State of North Carolina for more than six months next preceding the institution of this action?
Answer: Yes

"2. Were the plaintiff and defendant married as alleged in the complaint?
Answer: Yes

"3. Have the plaintiff and defendant lived separate and apart from each other for more than two years next preceding the institution of this action, as alleged in the complaint?
Answer: Yes

"4. Did the plaintiff commit adultery, as alleged in the answer?
Answer: No."

From the judgment entered on the verdict the defendant appeals, assigning error.

*John H. Small for plaintiff appellee.*
*Carpenter & Webb and Charles F. Coira, Jr., for defendant appellant.*

DENNY, J.   The defendant's 15th assignment of error is based on her first exception which assigns as error the refusal of the court below to dismiss the action in addition to setting aside the judgment entered on 26 April 1955.   The court below, in its discretion, instead of dismissing the action, ordered that service be completed in accordance with the provisions of G.S. 1-99.2, and enlarged the time for answering.

A judge of the Superior Court, in a civil action, may "in his discretion, and upon such terms as may be just, allow an answer or reply to be made, or other act to be done, after the time limited, or by an order may enlarge the time."   G.S. 1-152; *Aldridge v. Insurance Co.,* 194 N.C. 683, 140 S.E. 706; *Roberts v. Merritt,* 189 N.C. 194, 126 S.E. 513; *McNair v. Yarboro,* 186 N.C. 111, 118 S.E. 913.

Ordinarily, where a judge is vested with discretion, his doing or refusing to do the act in question is not reviewable upon appeal.   *Alexander v. Brown,* 236 N.C. 212, 72 S.E. 2d 522; *Church v. Church,* 158 N.C. 564, 74 S.E. 14; *Wilmington v. McDonald,* 133 N.C. 548, 45 S.E. 864.

The defendant prevailed on her motion to set aside the judment on the ground that service had not been completed or obtained on her at the time the judgment complained of was entered.   Hence, she had nothing to appeal from at that time except the contention, wholly without merit, that the court could not thereafter get service on her without dismissing the action and requiring the plaintiff to reinstitute it. Even so, the question the defendant seeks to have us determine with respect to the failure to dismiss the action is now moot, since she has made a general appearance, filed a verified answer, set up a plea in bar and testified in her own behalf in the trial below.

G.S. 1-103 provides that, "A voluntary appearance of a defendant is equivalent to personal service of summons upon him."   The filing of an answer is equivalent to a general appearance, and a general appearance waives all defects and irregularities in the process and gives the court jurisdiction of the answering party even though there may have been no service of summons.   *Harris v. Bennett,* 160 N.C. 339, 76 S.E. 217; *Ashford v. Davis,* 185 N.C. 89, 116 S.E. 162; *Burton v. Smith,* 191 N.C. 599, 132 S.E. 605; *Abbitt v. Gregory,* 195 N.C. 203, 141 S.E. 587; *Asheboro v. Miller,* 220 N.C. 298, 17 S.E. 2d 105; *In re Blalock,* 233 N.C. 493, 64 S.E. 2d 848, 25 A.L.R. 2d 818.   This assignment of error is overruled.

The most serious question on this appeal is presented by the defendant's exception No. 16, on which she bases her assignment of error No. 3, challenging the correctness of the following portion of his Honor's

charge to the jury: "The court charges you as a matter of law that during the period that the judgment of absolute divorce was in full force and effect and until it was set aside on February 10, 1956, the relations between the plaintiff in this action and Betty Curtis would not constitute adultery, unless you find from this evidence and by its greater weight that during that interval of time the plaintiff knew that his divorce decree was invalid, and that his continuing to live with Betty Curtis was done in bad faith and at a time when he knew or had sufficient ground or reasonable ground to know that he did not have a valid divorce and that his marriage ceremony on July 23, 1955, was ineffective and did not constitute a marriage between himself and Betty Curtis."

The textbook writers and the courts are in considerable disagreement as to whether cohabitation, under circumstances such as this case presents, does or does not constitute adultery. There seems to be unanimity among the authorities, however, that cohabitation pursuant to the second marriage does constitute adultery if the parties to the second marriage obtained the divorce decree through collusion and in bad faith or by fraud. *S. v. Williams*, 220 N.C. 445, 17 S.E. 2d 769, reversed 317 U.S. 287, 87 L. Ed. 279; *s. c.*, 222 N.C. 609, 24 S.E. 2d 256; *s. c.*, 224 N.C. 183, 29 S.E. 2d 744, affirmed 325 U.S. 226, 89 L. Ed. 1577; *S. v. Whitcomb*, 52 Iowa 85, 2 N.W. 970; *S. v. Watson*, 21 R.I. 354, 39 A. 193, 78 Am. St. Rep. 871, affirmed in 179 U.S. 679, 45 L. Ed. 383.

The authorities also hold that where one party to a marriage obtains a divorce by fraud and marries another who knows nothing about the fraud and enters into the marriage in good faith, such innocent person is not guilty of any wrongdoing. Or, if one who is married represents that he is a single person and enters into a second marriage without obtaining a divorce, he may be prosecuted for having lived with the second spouse. *S. v. Cutshall*, 109 N.C. 764, 14 S.E. 107, 26 Am. St. Rep. 599.

In the last cited case, *Clark, J.*, later *Chief Justice*, quoted with approval from the case of *Alonzo v. The State*, 15 Tex. App. 378, as follows: "While it is true that to constitute adultery there must be a joint physical act, it is certainly *not* true that there must be a joint criminal intent. . . . While the criminal intent may exist in the mind of one of the parties to the physical act, there may be no such intent in the mind of the other party. One may be guilty, the other innocent . . . So, if one of the parties was mistaken as to a matter of fact, after exercising due care to ascertain the truth in relation to such fact, which fact, had it been true, would have rendered the alleged criminal act legal and innocent, the party so acting under such mistake of fact would be innocent of crime."

In 17 Am. Jur., Divorce and Separation, section 463, page 380, it is said: "Cohabitation pursuant to the second marriage *after the annulment* constitutes adultery," citing *S. v. Watson, supra,* and *S. v. Whitcomb, supra.* (Emphasis added.)

We find in 27 C.J.S., Divorce, section 56 (3), page 599, the following: "Since an absolute divorce dissolves the marriage tie, . . . subsequent intercourse between a former spouse and a third person does not constitute adultery, provided a final decree has been rendered, and no fraud was practiced to obtain it. A subsequent reversal of the decree does not render the cohabitation under a second marriage before the reversal adulterous," citing *Gordon v. Gordon,* 141 Ill. 160, 30 N.E. 446, 33 Am. St. Rep. 294, 21 L.R.A. 387; *Bailey v. Bailey,* 45 Hun. 278, affirmed 142 N.Y. 632, 37 N.E. 566.

Likewise, in this same volume, section 67, page 626, it is said: "Where a wife, after having obtained a divorce, married and cohabits with her second husband before her first husband moves to vacate the decree, and the decree is vacated, the wife's act in cohabiting with her second husband does not constitute adultery so as to preclude her from obtaining a divorce," citing *Chisholm v. Chisholm,* 105 Fla. 402, 141 So. 302.

In the last cited case, the wife, after obtaining a divorce decree, married and cohabited with another, but separated from the second husband before her first husband moved to vacate the original decree. The original decree was vacated. The court held in the second trial for divorce from her first husband that her cohabitation with her second husband may technically be regarded as bigamy but did not constitute adultery such as would preclude her from obtaining a divorce.

In the case of *Bailey v. Bailey, supra,* the plaintiff instituted an action for divorce against his wife on the grounds of her adultery. A decree granting the plaintiff an absolute divorce was entered on 5 February 1886, which decree expressly gave him the right to remarry. From the judgment entered the defendant appealed. Plaintiff, without awaiting disposition of the appeal, married another woman and thereafter cohabited with her until 17 September 1886, when he heard that the court had decided to reverse the judgment. The court entered the order of reversal on 20 September 1886. The judgment was set aside because the question of the sanity of the wife at the time the action was instituted was raised. Her acts of adultery were proved beyond question. The Court said, however, "The court certainly had full and complete jurisdiction over the parties and the subject-matter of the action, and there is not the slightest suggestion of any wrong by the plaintiff in obtaining the judgment." And further, ". . . wherever the law invites an act, which would otherwise be unlawful, whether it be by express general provisions or through a *valid judgment* which purports to express the law of the particular case, the acts of parties in pursuance

thereof are not *illegal*, and especially is connubial cohabitation, under such circumstances, free from the charge of adultery."

In *Meyer v. Meyer*, 343 Ill. App. 554, 99 N.E. 2d 706, it appears that on 28 December 1942, Hester S. Meyer filed a complaint for divorce in the Circuit Court of Cook County against her husband, Arthur Meyer, on the ground of desertion. She alleged in her complaint that she was a resident of Cook County and the State of Illinois. The defendant filed an answer and a cross-complaint for divorce also on the ground of desertion. On 18 January 1943 the husband was granted an absolute divorce. Thereafter, on 1 May 1943, Arthur Meyer, relying on the validity of the divorce decree, married Constance Arts. A child was born to Meyer and Constance Arts on 9 June 1945. On 11 July 1944, Hester S. Meyer filed a petition attacking the divorce on the ground that the court lacked jurisdiction for the reason that neither she nor Arthur Meyer was a citizen of Cook County at the time the action was instituted and, therefore, she requested that the divorce decree be expunged. Arthur Meyer moved in the lower court to dismiss the petition for want of equity, which was allowed. Mrs. Meyer appealed. In the opinion filed 11 April 1946, the court reversed the order and remanded the cause for a new trial with specific instructions. *Meyer v. Meyer*, 328 Ill. App. 408, 66 N.E. 2d 457. There the Court said that, "The only question presented is whether plaintiff made out a *prima facie* case on the proposition that the decree of divorce was null and void for want of jurisdiction, her position being that neither of the parties was a resident of the County of Cook at the time the divorce proceeding was instituted, as required by the statute."

Finally, after another appeal, reported in 333 Ill. App. 450, 77 N.E. 2d 556, an order was entered in the Circuit Court on 1 April 1948, expunging the decree of divorce. Thereafter, it appears new pleadings were filed in the pending action. Plaintiff set up the cohabitation of the defendant with Constance Arts in bar of the relief sought by him in the cross-complaint. The court found the plaintiff, Hester S. Meyer, guilty of habitual drunkenness for the space of more than two years prior to the filing of the cross-complaint and granted the defendant, Arthur Meyer, an absolute divorce. The court said with respect to the second marriage of the defendant, "That Arthur Meyer's cohabitation up to February 17, 1948, under his marriage of May 1, 1943 to Constance Arts, was not adultery or bigamy, constituting a defense to his complaint for divorce; . . ." See *Smith v. Smith*, 64 Iowa 682, 21 N.W. 137; *Pratt v. Pratt*, 157 Mass. 503, 32 N.E. 746, 21 L.R.A. 97.

No one contends that the bonds of the marriage between the plaintiff and the defendant were dissolved by the judgment entered on 26 April 1954. The real question here, however, is this: Do the facts as revealed on this record warrant the conclusion that the plaintiff's conduct

in marrying Betty Curtis and living with her as his wife until the day before the decree of divorce entered on 26 April 1954 was set aside, constitutes adultery? We would answer this question in the affirmative without hesitation if the record disclosed any evidence of bad faith, collusion or fraud on the part of the plaintiff, Harold D. Harmon, in connection with the procurement of the divorce decree entered on 26 April 1954. *S. v. Williams, supra.* But there is no such evidence. He disclosed to the court in his affidavit the correct address of the defendant, Mary Prime Harmon. He employed competent counsel to represent him. He did what the law requires of a party when service must be obtained by publication. Therefore, in our opinion, it would be unfair and unjust to penalize this plaintiff when there is no evidence of intentional wrong on his part. Consequently, from the facts disclosed on this record, the charge of the court below will be upheld.

A careful examination of the record discloses that sixteen of the defendant's exceptions either have not been brought forward and assigned as error, or no reason or argument is stated, or authorities cited in support of the assignments based thereon. Hence, these exceptions and assignments of error will be taken as abandoned. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 562. In our opinion, the remaining exceptions and assignments of error present no question of substantial merit that would justify us in disturbing the result of the trial below.

In the trial below we find

No error.

JOHNSON, J., not sitting.